No. 98-147

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 208

STATE OF MONTANA,

Plaintiff and Respondent,

v.

STEPHEN LEROY COONEY,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

Honorable Douglas G. Harkin, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Terry G. Sehestedt, Attorney at Law, Missoula, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General, Helena, Montana

Robert L. Deschamps, III, County Attorney, Missoula, Montana

Submitted on Briefs: August 13, 1998

Decided: August 25, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1 In proceedings before the Fourth Judicial District Court, Missoula County, Stephen Leroy Cooney (hereinafter Cooney) was committed to the custody of the Director of the Department of Public Health and Human Services (hereinafter DPHHS) pursuant to the provisions of the Mental Competency Chapter of the Montana Rules of Criminal Procedure. Cooney appeals. We affirm.**

## ISSUE

**¶2 The issue before the Court is whether the District Court erred in committing Cooney to the continuing custody of the Director of the DPHHS under the provisions of § 46-14-301(3) and (4), MCA.**

## BACKGROUND

**¶3 On May 29, 1996, Cooney was charged before the Fourth Judicial District Court, Missoula County, with felony stalking, a violation of § 45-5-220, MCA. Cooney was also charged with violations of protective orders issued by the District Court in**

Powell County and the county court of Denver County, Colorado, which had resulted from a misdemeanor stalking conviction the year before.

¶4 Cooney's history of stalking is a protracted one. His pursuit of the woman who was the subject of the 1996 felony charge began in 1989 and continued even after Cooney had served a one-year sentence in county jail on misdemeanor stalking charges. The record also reflects that he is known to have pursued at least three other women at other times.

¶5 Expert psychiatric testimony offered at the dispositional hearing indicated that Cooney's pattern of behavior stems from an erotomanic type delusional disorder, a mental disease in which the afflicted person becomes obsessed with delusional beliefs that another person is in love with him. This disorder causes intermittent misperceptions of reality related to the delusional beliefs, which in Cooney's case include a conviction that his victim is infatuated with him, that she has gone to extraordinary lengths to initiate and maintain contact with him, and that she wants to marry him. The prognosis for successfully treating this kind of delusional disorder is, unfortunately, very poor. It is especially difficult to eradicate the delusional beliefs of individuals who, like Cooney, have maintained them in a stable form over a long period of time.

¶6 At his arraignment for the felony stalking charge, Cooney requested a sixty-day psychiatric evaluation at the Montana State Hospital in Warm Springs, Montana, and this request was granted. Based on a report submitted by the state hospital, the District Court initially found that Cooney was not fit to stand trial and committed him to the custody of the DPHHS. Relying on a subsequent report submitted by the hospital, the District Court later found that Cooney had regained his competency and ordered the proceedings to go forward. Under the terms of a plea agreement, Cooney entered a plea of not guilty by reason of a mental disease or defect, and the District Court again restored him to the custody of the DPHHS pending a review hearing pursuant to § 46-14-301(3), MCA. The District Court held a dispositional hearing on November 3 and 17, 1997, and entered an order on January 8, 1998, continuing Cooney's commitment to the Director of the DPHHS for custody, care and treatment.

## DISCUSSION

**¶7 Did the District Court err in committing Cooney to the continuing custody of the Director of the DPHHS under the provisions of § 46-14-301(3) and (4), MCA?**

**¶8 Conclusions of law made by the District Court are reviewable *de novo*. *Public Employees' Ass'n v. Department of Transp.*, 1998 MT 17, ¶ 8, 954 P.2d 21, ¶ 8, 55 St. Rep. 60, ¶ 8. Findings of fact made by the District Court sitting as the trier of fact are set aside only where they are clearly erroneous. Rule 52(a), M.R.Civ.P.; *Interstate Prod. Credit Ass'n v. DeSaye* (1981), 250 Mont. 320, 322, 820 P.2d 1285, 1287. A court's findings are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *State v. Woods* (1997), 285 Mont. 46, 53, 945 P.2d 918, 922.**

**¶9 The District Court's authority to order Cooney into the custody of the Director of the DPHHS is found in § 46-14-301, MCA, which reads in pertinent part:**

> (3) A person committed to the custody of the director of the department of public health and human services must have a hearing within 180 days of confinement to determine the person's present mental condition and whether the person must be discharged or released or whether the commitment may be extended because the person continues to suffer from a mental disease or defect that renders the person a danger to the person or others . . . The hearing is a civil proceeding, and the burden is upon the state to prove by clear and convincing evidence that the person may not be safely released because the person continues to suffer from a mental disease or defect that causes the person to present a substantial risk of:

(a) serious bodily injury or death to the person or others;

(b) an immediate threat of physical injury to the person or others; or

(c) substantial property damage.

> (4) According to the determination of the court upon the hearing, the person must be discharged or released on conditions the court determines to be necessary or must be committed to the custody of the director of the department of public health and human services to be placed in an appropriate

mental health facility for custody, care, and treatment.

"Serious bodily injury" as that term is used in § 46-14-301(3)(a), MCA, is defined in § 45-2-101(64)(b), MCA, as including "serious mental illness or impairment."

**¶10 In its January 8, 1998 Order, the District Court found that Cooney continued to suffer from a mental disease or defect. The court also found that, if released, Cooney was capable of acting upon his delusional beliefs, creating a substantial risk of serious bodily injury to his victim, including bodily injury in the form of serious mental illness or impairment as set forth in § 45-2-101(64)(b), MCA. Cooney does not contest the District Court's findings that he continues to suffer from a mental disease or defect but does contest the District Court's finding that his condition would present a substantial risk of bodily injury to his victim if he were discharged at this time.**

**¶11 It is Cooney's contention that while the evidence in the record indicates Cooney's past behavior may have caused his victim emotional anguish or emotional trauma, the State has not met its rather substantial burden of showing by clear and convincing evidence that Cooney's actions resulted in a diagnosable "serious mental illness" in his victim. Additionally, Cooney argues, the fact that he is likely to continue to engage in his stalking activities upon release is not sufficient to show that his victim is at risk for developing a "serious mental illness" should Cooney resume stalking her.**

**¶12 Our own review of the record supports a finding that Cooney's mental condition renders him dangerous and that his release from the state hospital poses a substantial threat of serious bodily injury to the victim he has been pursuing since 1989. The record contains the evaluations and opinions of two psychiatric experts, both of whom concluded that Cooney would almost certainly continue to stalk the object of his delusions if the state's custody and supervision were terminated. Conditional release on an out-patient basis is not a viable solution because Cooney does not believe he is ill and would not likely continue his therapy and medication outside a structured hospital environment. Cooney's prior violation of a judicial restraining order within only four months of his release from the county jail on misdemeanor charges evidences the likelihood of his continued pursuit of this woman.**

¶13 The record also clearly reflects the effect that such a pursuit would have on Cooney's intended victim. The testimony of the staff psychiatrist at the state hospital indicates that Cooney's stalking activities towards this woman, which have lasted over a period of approximately eight years, have already caused her a great deal of emotional anguish related to fears of her own and her family's safety and may have already resulted in a diagnosable psychiatric condition for her. In an effort to escape Cooney's attentions, she has resorted to a kind of self-imposed exile and has described her prior encounters with Cooney as terribly frightening and upsetting experiences.

¶14 On these facts, we hold the State has met its burden of demonstrating by clear and convincing evidence that Cooney may not be safely released from the custody of the DPHHS at this time. We therefore conclude that the District Court did not err in committing Cooney to the continuing custody of the Director of the DPHHS under the provisions of § 46-14-301(3) and (4), MCA.

¶15 Affirmed.

/S/ J. A. TURNAGE

 We concur:

 /S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER