No. 98-238

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 99

294 Mont. 270

980 P.2d 629

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ROMAN SONNY McCARTHY,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

Honorable Mike Salvagni, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Brian P. Fay, Angel Law Firm, Bozeman, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Mark W. Mattioli,

Assistant Attorney General, Helena, Montana

Marty Lambert, County Attorney; Robert Brown, Deputy County

Attorney, Bozeman, Montana

Submitted on Briefs: April 8, 1999

Decided: May 18, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. In proceedings before the Eighteenth Judicial District Court, Gallatin County, Roman Sonny McCarthy (Roman) was convicted of stalking Karen McCarthy (Karen) by mail. Roman appeals. We affirm.**

## ISSUES

**¶2. 1. Did the District Court err in denying Roman's motion to dismiss on the grounds that "repeatedly," as that term is used in § 45-5-220, MCA, means more than twice?**

**¶3. 2. Was there sufficient evidence presented at trial to support Roman's conviction?**

**¶4. 3. Is § 45-5-220, MCA, constitutionally void for vagueness under the Fourteenth Amendment to the United States Constitution?**

**¶5. 4. Is § 45-5-220, MCA, overbroad on its face by proscribing speech protected under the First Amendment to the United States Constitution?**

# BACKGROUND

¶6. The relationship between Roman and Karen spans a period of approximately fifteen years. The relationship, however, was a chaotic one, and in October 1995, Karen decided to terminate it. Karen moved into a women's shelter, and shortly thereafter, obtained a temporary restraining order against Roman. This restraining order was continued as a permanent order of protection in November 1995. This protective order directed that Roman not "personally contact, telephone, or otherwise communicate, follow, harass, intimidate, threaten, annoy or disturb" the peace of Karen.

¶7. In July 1996, Roman petitioned for a restraining order against Karen, and the District Court issued a reciprocal protection order that prohibited the parties from molesting or disturbing the peace of one another, and directed that neither party "follow, harass, intimidate, telephone, touch, threaten, or contact each other by a third party at work, at school, in public or at any other place." By its terms, this order of protection was to remain in full force and effect until August 21, 1997.

¶8. Despite the issuance of both protective orders, Roman continued to telephone and mail letters to Karen. In November 1996, Roman was charged and convicted of stalking Karen in violation of the protective orders. He was sentenced to five years in the Montana State Prison (MSP), with two years suspended.

¶9. While incarcerated at the Gallatin County Detention Center awaiting transportation to MSP on his first stalking conviction, Roman mailed a letter to the Law and Justice Center in Bozeman, Montana, addressed to both Karen and Gloria Edwards (Gloria), one of the Gallatin County Victim Witness Coordinators who worked at the center. Gloria opened and read the letter, determined that it contained more of the "same stuff," and submitted a copy of the letter to a detective at the Bozeman police department. Gloria also contacted Karen and informed her that she had received a letter for her from Roman.

¶10. A week later, while incarcerated at MSP, Roman sent another letter directly to Karen at her home address. Following the advice of her clinical therapist, Karen did

not open the letter, but instead contacted the Bozeman police department to report that Roman had again attempted to contact her by mail in violation of the protective orders.

¶11. Roman was charged by information with stalking, second offense, and tried before a jury. At the close of the State's case-in-chief and again at the close of evidence, Roman moved to have the charges against him dismissed on the grounds that two instances of attempted contact by letter were legally insufficient to support a conviction for stalking. The District Court denied both motions. Roman was found guilty and sentenced to five years at MSP, two years suspended, to run consecutively with his previous sentence. Roman appeals his conviction and the denial of his motion to dismiss.

## DISCUSSION

¶12. Did the District Court err in denying Roman's motion to dismiss on the grounds that "repeatedly," as that term is used in § 45-5-220, MCA, means more than twice?

¶13. The trial court in a criminal case may dismiss the action and discharge the defendant where there is insufficient evidence, as a matter of law, to support a guilty verdict. Section 46-16-403, MCA. The denial of a motion under § 46-16-403, MCA, is within the sound discretion of the trial court. *State v. Hayworth*, 1998 MT 158, ¶ 50, 964 P.2d 1, ¶ 50, 55 St.Rep. 631, ¶ 50. We review the denial of such a motion to determine whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hayworth*, ¶ 50. We review a district court's conclusions of law to determine whether those conclusions are correct. *State v. Cooney*, 1998 MT 208, ¶ 8, 963 P.2d 1272, ¶ 8, 55 St.Rep. 886, ¶ 8.

¶14. The elements of the offense of stalking are defined in § 45-5-220(1), MCA, which reads:

A person commits the offense of stalking if the person purposely or knowingly causes another person substantial emotional distress or reasonable apprehension of bodily injury or death by repeatedly:

(a) following the stalked person; or

(b) harassing, threatening, or intimidating the stalked person, in person or by phone, by mail, or by other action, device, or method.

¶15. Roman argues that the District Court erred in denying his motion to dismiss because evidence that he attempted to contact Karen on two separate occasions was insufficient, as a matter of law, to support a conviction for stalking. He asserts that under its common definition, the term "repeatedly" means more than twice. Roman further argues that this Court's opinion in *State v. Martel* (1995), 273 Mont. 143, 902 P.2d 14, that "repeatedly," as that term is used in § 45-5-220, MCA, means "more than once" contravenes the legislative intent behind the statute.

¶16. We disagree that two unwanted attempts at contact with the victim is legally insufficient to support a conviction for stalking. As we stated in *Martel*, "Words such as 'repeatedly,' 'harassing,' and 'intimidating' have commonly understood meanings. 'Repeatedly' means 'more than once.'" 273 Mont. at 150, 902 P.2d at 19. Moreover, our decision in *Martel* does not contravene the legislative intent behind this statute. At the House Judiciary Committee hearing on the proposed stalking legislation, Representative Winslow asked Senator Towe, one of the bill's sponsors, how many times somebody would have to follow, intimidate by phone or mail, etc., in order for there to be a stalking conviction. Senator Towe replied that the word "repeated" means more than once. Hearing on SB 37 Before the House Judiciary Comm., 1993 L. (Mont., March 2, 1993).

¶17. Because § 45-5-220, MCA, requires only that the State demonstrate more than one instance where the defendant has harassed, intimidated or threatened a person by mail, and because the evidence in the record demonstrates that the State satisfied this requirement in Roman's case, we hold that the District Court did not abuse its discretion in denying Roman's motion to dismiss pursuant to § 46-16-403, MCA.

¶18. Was there sufficient evidence presented at trial to support McCarthy's conviction?

¶19. We review the sufficiency of the evidence to support a jury verdict in a criminal case to determine whether, after viewing the evidence in the light most favorable to

No

the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cooney* (1995), 271 Mont. 42, 47, 894 P.2d 303, 306.

¶20. Roman argues that there was insufficient evidence presented at trial from which a reasonable jury could find that Roman repeatedly harassed Karen where one of the two letters upon which his conviction rests was mailed and addressed to a third party and not to Karen directly. Moreover, Roman argues, if Karen felt harassed by the fact that he attempted to contact her through Gloria, the blame should be attributed to Gloria for reporting the letter to Karen, rather than to him for sending it.

¶21. We find this argument unpersuasive. As an initial matter, we note that the letter mailed to Gloria was addressed to both Gloria and Karen. Although Gloria did not read the contents of the letter to Karen, she did communicate to her that she had received the letter and that it was similar in content to prior correspondence from Roman. We note further that the protective order which prohibited Roman from contacting Karen via third parties was still in force at the time Roman mailed the letter to Gloria.

¶22. Section 45-5-220(b), MCA, states that stalking occurs when the stalker repeatedly harasses, threatens, or intimidates the stalked person "in person, or by phone, by mail, *or by other action, device or method*." (Emphasis added). Communicating through a third party whom the stalker knows is likely to relay the fact of contact, and hence produce the desired effect of harassing or intimidating the victim, constitutes an "action, device or method" of stalking. "To hold otherwise would defeat the clear purpose of the stalking statute by permitting a stalker to intimidate and harass his intended victim simply by communicating his threats to third parties who (the stalker knows and expects) will inform the victim." *State v. Rooks* (Ga. 1996), 468 S.E.2d 354, 356 (Sears, J., concurring).

¶23. We have employed similar reasoning in the application of an analogous statute defining the offense of intimidation by threat:

We believe that it is within the language and intent of the statute that the person who receives the threat can be different from the person who is sought to be compelled by the threat. Otherwise, for example, an individual could contact the news media threatening to take the life of a hostage if the Governor does not meet his demands, and he could not be

convicted under [the intimidation] statute. But it is this very situation which the statute is aimed at outlawing.

*State v. Lance* (1986), 222 Mont. 92, 108, 721 P.2d 1258, 1269.

**¶24. There are a host of potential scenarios in which a stalker could communicate with the friends, family, co-workers, employers, and neighbors of the victim with the full and reasonable expectation that the form and content of such contacts will be conveyed to the victim. There is as great a likelihood, and possibly even a greater one, that such contacts would generate substantial emotional distress for the victim as contacting the victim directly because of the additional stress and embarrassment caused by the involvement of these third parties in the activities of the stalker. Such a result clearly falls within the prophylactic radius of the statute, particularly where there is a protective order in place expressly prohibiting such contact.**

**¶25. There is substantial credible evidence in the record from which a rational trier of fact could have found beyond a reasonable doubt that Roman's purpose in, and the ultimate effect of, sending the letter to Gloria was to harass Karen, and that Roman repeatedly harassed Karen both directly and indirectly through contact with a third party familiar to Karen. We therefore will not disturb the jury's findings on this issue.**

**¶26. Roman also argues that there was insufficient evidence presented at trial from which a reasonable juror could find that his attempted contacts with Karen caused her substantial emotional distress or reasonable apprehension of bodily injury or death because she never actually read the contents of either letter. In the alternative, Roman argues that in the event Karen did suffer from emotional distress as a result of the letters, such distress was not substantial or reasonable under the circumstances, since Roman was already incarcerated at the time the letters were written and Karen was merely speculating as to the probable content of the letters.**

**¶27. The standard for determining whether a person has suffered emotional distress or reasonably apprehended bodily injury is that of a reasonable person under similar circumstances. *Martel*, 273 Mont. at 150, 902 P.2d at 19. Gloria testified that, upon learning that Roman had again attempted to contact her, "[Karen] was real upset. She was scared." Karen testified that prior to Roman's first conviction for stalking,**

she would receive letters from him "almost every single day." These letters contained "threats and a lot of negative stuff about my character" that made her feel "horrible." When she received the letter Roman sent to her home address she "got really terrified" and "didn't want to open it and read what was in there . . . just didn't think I could handle reading it." Karen's therapist testified that she had instructed Karen not to open Roman's letters any more because of the distress they caused her. Finally, a detective with the Bozeman police department testified that upon receiving or learning of the letters Roman had sent from prison, Karen was equally if not more upset than she had been upon receiving his letters in the past.

¶28. The jury in this case found that Roman's efforts to contact Karen caused her substantial emotional distress or reasonable apprehension of bodily injury or death. The jury also found that given the protracted and tumultuous relationship between these two individuals, Karen's distress at receiving Roman's letters was reasonable, notwithstanding the fact that she never actually read the contents of the letters or that Roman was already incarcerated on his first stalking conviction when he sent the letters. Because we find sufficient evidence in the record to support these findings, we affirm Roman's conviction.

¶29. Is § 45-5-220, MCA, constitutionally void for vagueness under the Fourteenth Amendment to the United States Constitution?

¶30. Roman argues that Montana's stalking statute is void on its face because the proscription against repeatedly engaging in harassing conduct is unconstitutionally vague. The State responds that this argument is being raised for the first time on appeal and that therefore this Court should decline to address this argument on its merits. We agree with the position of the State.

¶31. The relevant portion of § 46-20-701(2), MCA, provides that:

A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that:

(a) the right asserted in the claim did not exist at the time of the trial and has been

determined to be retroactive in its application;

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of; or

(c) material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence.

Because this argument was not addressed before the District Court and none of the statutory exceptions apply, we decline to address Roman's argument that Montana's stalking statute is unconstitutionally vague.

¶32. **Is § 45-5-220, MCA, overbroad on its face by proscribing speech protected under the First Amendment to the United States Constitution?**

¶33. **Roman argues that the stalking statute is unconstitutionally overbroad because it "imposes a real and substantial threat to the free exercise of individual fundamental rights." The State responds that this argument was not raised before the District Court and should therefore not be considered by this Court on appeal. For the same reasons given above on issue number three, we decline to address Roman's argument that the statute at issue is unconstitutionally overbroad.**

¶34. **Affirmed.**

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ KARLA M. GRAY

Justice W. William Leaphart, concurring in part and dissenting in part.

¶35 I concur with the Court's decision on issues 1, 3 and 4. I dissent as to issue 2, whether there was sufficient evidence presented to support Roman's conviction for stalking.

¶36 In sending a letter directly to Karen, Roman was in violation of the protective order prohibiting him from contacting Karen. However, I am at a loss as to how he can be found guilty of stalking on the basis of an unopened letter. The stalking statute prohibits a person from causing another person substantial emotional distress by "harassing, threatening, or intimidating the stalked person, in person or by phone, by mail, or by other action, device, or method." Section 45-5-220(1)(b), MCA. The statute clearly encompasses mailings. However, it is equally clear that the statute envisions that the stalked person suffer emotional distress due to the "harassing, threatening, or intimidating" nature of the content of the mailing. Since the letter to Karen was unopened, we are left to speculate as to its content. We can just as easily speculate that it contained an apology. In order to convict Roman of stalking, the trier of fact must assume that the content of the letter was "harassing, threatening, or intimidating." A conviction for a felony offense should not be based upon such an assumption as to a critical fact.

¶37 I agree that "repeatedly" means more than once. In the present case there are two incidents alleged, the mailing of the letter to Gloria and Karen and the mailing to Karen individually. For the reasons set forth above, I think there was insufficient evidence of stalking as to the unopened letter mailed to Karen. That being so, the remaining letter, being but a single incident, does not satisfy the requirement of "repeated" conduct.

Accordingly, I would reverse the conviction for stalking.

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler dissenting.

¶35. I concur with the majority's conclusion that, within the context of the stalking statute, "repeatedly" means more than once. I dissent from the majority's conclusion that there was sufficient evidence for a rational trier of fact to have found that the defendant, Roman Sonny McCarthy, committed the offense of stalking beyond a reasonable doubt.

¶36. I concur with Justice Leaphart's dissenting opinion, as far as it goes. However, I would conclude that neither the letter sent by the defendant to Gloria Edwards, nor the unopened envelope from the defendant which was received by Karen McCarthy, were communications prohibited by the stalking statute.

¶37. For purposes of this case, the stalking statute found at § 45-5-220, MCA, prohibited repeatedly harassing, threatening, or intimidating Karen by mail. Because of the restraining order which was in effect, and because of the defendant's prior conviction of stalking, the potential penalty in this case was five years in prison and a $10,000 fine.

¶38. In this case, the extent of the defendant's contact with Karen was her receipt of one sealed envelope which was never opened. For purposes of the record, the contents of the sealed envelope are unknown. Based on Karen's receipt of one sealed envelope, the contents of which were unknown, the defendant was convicted of a felony punishable by five years in prison and a fine of $10,000.

¶39. The defendant may be a bad person; he may have violated protective orders which were in effect at the time of his communication; and the contents of the unopened envelope may have been offensive and frightening. However, for purposes of this case, we have to assume the envelope contained nothing because there was no

evidence of the envelope's content which was disclosed to the jury.

¶40. There is no way that a person of average intelligence could read the stalking statute found at § 45-5-220, MCA, and be on notice that delivery of an envelope which communicated no message on one occasion constituted a felony punishable by up to five years in prison and a $10,000 fine. Therefore, if the statute is so broad that it prohibits that kind of conduct, it is void for vagueness. *See State v. Stanko*, 1998 MT 325, 55 St. Rep. 1302. However, before declaring a statute unconstitutional, this Court "must adopt a construction of the statute which renders the statute constitutional in preference to one which renders it invalid." *State v. Helfrich* (1996), 277 Mont. 454, 456, 922 P.2d 1159, 1160. In my opinion, either the facts in this case do not violate the statute, or the statute is unconstitutionally vague.

¶41. Although the extent of the defendant's direct communication with his alleged victim was the delivery of one unopened envelope, the majority concludes that the "repeatedly" requirement of the stalking statute is satisfied by the fact that Gloria Edwards, a victim's assistant in the Gallatin County Attorney's Office, also received a letter from the defendant which was addressed to both Edwards and Karen. However, the fact that it was addressed to Karen is irrelevant. It was not sent to Karen; it was not received by her; she never handled it; and she never read it.

¶42. The only reason that Karen was even aware of the letter received by Gloria Edwards was because the day after she received it, Edwards informed Karen that it had been sent. In other words, it was not the defendant who caused Karen emotional distress by sending the first letter, it was Edwards, the victim's assistant in the county attorney's office whose apparent responsibility is to help victims--not contribute to their emotional distress. If the consequence of mere knowledge of the letter was sufficiently severe to warrant punishment of up to five years in jail and a $10,000 fine, why would a victim's assistant cause the result that the law is designed to protect against?

¶43. So, according to the majority and the District Court, the State satisfied its burden of proving that the defendant purposely or knowingly caused the victim substantial emotional distress by repeatedly harassing, threatening, or intimidating her by mail, even though the substance and extent of his communications with her was the receipt of one envelope, the contents of which she was unaware, and a third party's receipt of a second envelope, the contents of which were never disclosed to

her and about which she would never have known had the person employed to protect her not advised her that it had been received. This all seems to me a little like conviction by smoke and mirrors.

¶44. The defendant may have violated the restraining order which prohibited any contact with Karen; however, the remedy for that violation was contempt of court.

¶45. The defendant may have had a history of intolerable conduct in his relationship and attempted relationship with Karen; however, he had already been convicted once of stalking for his prior conduct.

¶46. What was not proven in this case was that the defendant's conduct subsequent to his first conviction for stalking satisfied the elements of the offense, as set forth in § 45-5-220, MCA. The majority's flexible application of § 45-5-220, MCA, may accomplish a socially desirable result in this case; however, the precedent established expands this serious offense beyond what was ever intended by the Legislature.

¶47. For these reasons, I dissent from the majority's conclusion that there was sufficient evidence, even when viewed in the light most favorable to the prosecution, from which any rational trier of fact could have found that Roman Sonny McCarthy committed the offense of stalking.

/S/ TERRY N. TRIEWEILER