JUSTICE McKINNON,
dissenting.
¶22 Based on well-reasoned precedent of this Court, an uncorroborated prior inconsistent statement may not be the sole source of support for the central allegation of a criminal charge; in this case, bodily injury. *24 Each element of a criminal charge must be supported with a factual basis upon which a conclusion of guilt beyond a reasonable doubt may be reached. Here, the Court incorrectly concludes Rogers’ statement to law enforcement that Strobel struck her in the face is corroborated by Baty’s observations that Strobel pushed Rogers into the truck. In my opinion, it is quite a reach to conclude that being pushed corroborates Rogers’ statement that she was struck in the face, which is the essential fact necessary to establish bodily injury in this case. The substance of the prior inconsistent statement, utilized here by the State to substantiate an element of the offense, must be corroborated. Bruising, red marks, observations of bodily injury by witnesses, or other evidence that Rogers was struck in the face would have been sufficient. The Court’s conclusion that being pushed corroborates Rogers’ prior inconsistent statement of being struck in the face stands in stark contrast to well-reasoned precedent of this Court requiring that the prior inconsistent statement be corroborated by independent, reliable evidence.
¶23 We have consistently held that “a criminal conviction cannot be sustained where the only evidence of some essential element of the crime is a prior inconsistent statement.” Giant, ¶ 12; White Water, 194 Mont. at 89, 634 P.2d at 639; State v. Gommenginger, 242 Mont. 265, 278, 790 P.2d 455, 463 (1990). The City charged Strobel with the offense of partner or family member assault, pursuant to § 45-5-206(1)(a), MCA. A prosecution pursuant to this section requires the City to establish that Strobel “purposely or knowingly cause[d] bodily injury to a partner or family member.” Significantly, Strobel was not charged with “purposely or knowingly causfing] reasonable apprehension of bodily injury ...,” § 45-5-206(1)(c), MCA. (Emphasis added.) Thus, the City had to prove beyond a reasonable doubt that: (1) Strobel caused bodily injury to Rogers; and (2) Strobel acted with purpose or knowledge. Bodily injury is defined as “physical pain, illness, or an impairment of physical condition....” Section 45-2-101(5), MCA. Here, the evidence relevant to the statutory definition of bodily injury was that Strobel caused Rogers “physical pain” when he struck her in the face. Rogers testified at trial, however, that Strobel did not try to strike her in the face. Thus, Rogers’ prior inconsistent statement regarding an essential element of the crime had to be corroborated with independent, reliable evidence.
¶24 In White Water, we held that a prior inconsistent statement admitted as substantive evidence pursuant to Rule 801(d)(1)(A), M. R. Evid., although admissible, was insufficient by itself to support a conviction without corroboration by independent evidence. White *25 Water, 194 Mont. at 88-89, 634 P.2d at 638-39. White Water was charged with sexual intercourse without consent based upon the State’s allegations that he penetrated the victim’s vagina with his finger. The only evidence supporting an essential element of the offense—penetration—was the victim’s prior inconsistent statement. The victim had told law enforcement White Water placed his hand down the back of her pants and penetrated her vagina with his finger. At trial, however, the victim testified that White Water had only touched her “butt” next to her skin and then removed his hand when her mother came into the room. The victim’s mother testified that she had no knowledge of whether penetration occurred and that all she saw when she came into the room was White Water removing his hand from the victim’s underwear. Observing that perhaps the evidence would have supported a charge of sexual assault, we affirmed the dismissal of the charge because “[w]ithout [the victim’s testimony], there is no evidence of one essential element of the offense of sexual intercourse without consent: penetration.” White Water, 194 Mont. at 88, 634 P.2d at 638.
¶25 Similarly, in Giant we observed that an essential element of the offense was the identity of the victim’s assailant. Giant was charged with aggravated assault after the victim reported to law enforcement that Giant attacked her from behind by wrapping duct tape around her neck, threatening her with a gun, and dragging her by the hair to a bedroom. She was placed on or near a large piece of black plastic and wrapped with more duct tape where she was beaten, choked, and stabbed in the arm with an ice pick. A search of the house produced pieces of duct tape, a broken steak knife, blood stained clothing and bedding, a large piece of black plastic, and a gun and ammunition. Giant fled and was at large for four months, having withdrawn all available cash from the couple’s savings account. At trial, the victim identified her assailant as her son, and not Giant. We observed that the victim’s prior inconsistent statements and Giant’s flight made up the only evidence against Giant “on the essential element of the identity of the assailant.” Giant, ¶ 15. Although finding that the evidence clearly established that an assault had occurred, there was no corroboration of the victim’s prior inconsistent statement that Giant was her assailant. We declined the State’s invitation to conclude there was corroboration through evidence that the victim had stopped cooperating with the County Attorney when Giant was released on bail and that she had asked the criminal charges against Giant be dismissed after her divorce proceedings were dismissed. We found “none of this evidence independently corroborates the statements” and *26 that the victim’s “prior statements alone are insufficient as a matter of law to support Giant’s convictions.” Giant, ¶ 37.
¶26 Several cases are noteworthy for having found sufficient corroboration of a prior inconsistent statement substantiating an essential element of the crime, which are easily distinguished from the facts present here. In Charlo, Steele was stabbed in the abdomen with a knife as he and Albert Charlo were attempting to jumpstart a car outside a laundromat. The car belonged to Beth Charlo, who was the defendant’s daughter and Steele’s girlfriend. Beth told law enforcement that she saw Steele fall, then get up and say to her, “He just stabbed me.” Steele told police that he saw Charlo take a knife out of his back pocket and stated “I knew Albert stabbed me.” At trial, both Steele and Beth testified that they did not know who stabbed Steele. We held there was sufficient corroboration of the prior statements made by Steele and Beth because the laundromat owner testified that Charlo, Beth, and Steele were the only people in the parking lot at the time of the stabbing and Beth, when testifying, stated that she saw Charlo and Steele standing together in front of the car, saw Steele fall down, and saw Charlo with a knife in his hand. Noting that the identity of Steele’s assailant was the essential element of the crime in dispute, we held that “the corroborating testimony of three witnesses places Charlo near Steele immediately prior to the stabbing and confirms that Steele was stabbed” and “the corroborating testimony of one witness places a knife in Charlo’s hand.” Charlo, 226 Mont. at 217, 735 P.2d at 281. Accordingly, the prior statement of Steele and Beth that Charlo was Steele’s assailant was corroborated with independent, although circumstantial, evidence of identity.
¶27 In Torres, upon which the Court relies heavily, there was similarly independent evidence corroborating the victim’s prior inconsistent statement of an essential element of the crime of aggravated assault. Torres and his wife, Grendy Torres, got into an argument when Torres learned Grendy was sending money to her family in Costa Rica. Grendy left for the home of her co-worker, Marina Sunell. Torres broke down Marina’s door and removed Grendy. Marina called 9-1-1 and told law enforcement that Torres had grabbed Grendy “like a piece of rag” and dragged her from the house. Once Torres and Grendy arrived home, Torres retrieved a Glock .45 from his truck and followed Grendy upstairs. As officers approached the residence they heard a muffled gunshot and learned that Torres had opened a sliding glass door and fired a shot at the ground. Torres fired a second shot that shattered the sliding glass door and passed above the officers’ heads. Shortly thereafter, Grendy came out of the residence. Officers testified that *27 Grendy was frantic, crying, shaking, and left the residence at a fast pace or jog. Torres remained inside the house and fired a third shot into the bedroom floor, and then surrendered himself to police. Grendy told law enforcement that she was afraid that night and thought she was going to die. She also made statements to law enforcement that she was taken from Marina’s house against her will; that Torres had pushed her head into the windshield when they were driving, which caused a small crack; and that a larger crack was caused when Torres hit the windshield himself out of anger. At trial, however, Grendy testified that she had lied to police, that she willingly departed Marina’s house, and that “she slipped from pulling and hit her head” on the windshield as a result of Grendy hitting Torres.
¶28 Torres, who was charged with aggravated assault, argued that there was insufficient evidence that he used force or caused Grendy reasonable apprehension of serious bodily injury or death. We explained in Torres that the necessary corroboration may not “be supplied only by other evidence that is not sufficient to prove guilt.” Torres, ¶ 27. After reviewing the evidence, we found independent corroboration of the essential element of the offense—reasonable apprehension of serious bodily injury or death—through Torres’ own statements admitting that Grendy did not want to leave Marina’s house and that he held her in the bedroom with a firearm in his hand. We found corroboration of reasonable apprehension of bodily injury in the undisputed evidence that Torres intentionally fired shots from the bedroom; that his admissions established he shot the first bullet to make Grendy realize the “seriousness” of the situation “she had caused”; and that officers observed Grendy’s fear and apprehension when she left the house and stayed in a hotel room that night rather than returning home. We held that “[a]s long as each element of the offense finds support in some independent, reliable evidence of guilt besides the prior statement, however, corroboration will be sufficient.” Torres, ¶ 27 (emphasis added).
¶29 In my opinion this Court’s statement in Torres that there must be “independent, reliable evidence of guilt besides the prior statement,” Torres, ¶ 27, mischaracterized the rule. The independent reliable evidence must not corroborate guilt, but must corroborate the substance of the prior inconsistent statement which is being used to establish an element of the crime. Nonetheless, the Court perhaps today recognizes it misstated a fundamental rule when the Court explains, in contrast to Torres, the “corroborating testimony does not have to be sufficient, standing alone, to prove guilt.” Opinion, ¶ 18. The rule is that a prior inconsistent statement, the substance of which has *28 been corroborated, may stand as independent, reliable evidence of guilt and is sufficient to support an essential element of the crime. White Water, 194 Mont. at 89; Giant, ¶ 12. Unfortunately the Court, once again, departs from clear precedent by concluding that the corroborating testimony simply has to “ ‘support’ the elements of the offense ...,” Opinion, ¶ 18 (emphasis added); that is, presumably any element or even the fact that some incident took place at all. In other words, a prior inconsistent statement concerning an essential element of the offense is now sufficient to sustain a conviction even though the corroborating evidence supported a different and, perhaps, undisputed element of the crime—for example, identity or reasonable apprehension of fear. The Court’s analogy between Strobel pushing Rogers into the truck as supporting her prior inconsistent statement of being struck in the face stands in stark contrast to evidence that Charlo was observed holding a knife where the identity of the stabber was in dispute. Opinion, ¶ 18. Further, in addition to rewriting Torres, the Court also attempts to rewrite White Water. Opinion, ¶ 19. Respectfully, any “shortcomings” are with the Court’s analysis today, and not with “the White Water Court’s analysis on this point.”[1] The substance of the corroborating evidence in Torres and Charlo is easily distinguished from the case presented here. It is undisputed that the State was using Rogers’ prior inconsistent statement as support for the element of bodily injury. Being pushed into the truck neither corroborates being struck in the face nor is it “independent, reliable evidence of guilt....” Torres, ¶ 27.
¶30 The Court also relies upon Finley and Vukasin as examples of independent evidence which corroborates a prior inconsistent statement used to establish an essential element of the crime. In Finley, however, the defendant was charged with partner or family member assault pursuant to § 45-5-206(1)(c), MCA, requiring that the defendant cause “reasonable apprehension” of bodily injury. Debbie *29 Finley called 9-1-1 after she fled her residence without shoes and in her sleepwear. She told the dispatcher that Finley was trying to hurt her and said he was going to crush her head in. She said she was frightened because her son and mother remained in the home and Finley was inside drunk, trashing the place. When the victim testified at trial that she lied to law enforcement and fabricated the story so the police would remove Finley from her house, we held that “a rational trier of fact [could] conclude that the ‘reasonable apprehension of bodily injury’ element was satisfied beyond a reasonable doubt.” Finley, ¶ 30. We described the corroborating evidence of reasonable apprehension as follows:
The 911 recording was introduced as evidence in the Justice Court trial. It captured more than just words. It clearly demonstrated Debbie’s outright fear that Finley was going to harm her. She told the dispatcher that Finley had threatened to crush her head. Furthermore, she was scared enough to flee her home, into a cold night with fresh snow on the ground, wearing only pajamas and socks. Not only did Debbie repeatedly express concern that Finley had followed her, but her fear was great enough that the dispatcher had to coax her out of hiding, once inside of the Town Pump. Additionally, the Justice Court heard from three police officers who testified to Debbie’s distraught appearance. She told Reighard that if she had not left her house, she would probably be dead. Furthermore, Reighard confirmed the damage to the house and blood on the wall. These observations corroborated the story Debbie told on the 911 recording. Debbie’s reluctance to remain in her house without police presence culminated in her decision to remove her entire family from the home that night. Finally, the Justice Court heard Debbie’s trial testimony, which tended to conflict with almost all of the other evidence in the record.
Finley, ¶ 30. Undisputedly, Debbie’s prior inconsistent statements that she feared being injured by Finley were corroborated by this independent evidence demonstrating she was in fear of Finley and of being hurt. However, aside from the qualitative characteristics of the evidence in Finley, the essential element of the offense in Finley was “reasonable apprehension” of bodily injury and is thus distinguishable from a charge premised upon “knowingly or purposely causing bodily injury.” Accordingly, any evidence upon which a rational trier of fact could conclude “reasonable apprehension of bodily injury” by the victim would be sufficient corroboration of an essential element of the offense pursuant to § 45-5-206(1)(c), MCA. We held that “the standard is objective, asking whether a reasonable person under similar *30 circumstances would have reasonably apprehended bodily injury.” Finley, ¶ 29.
¶31 The Court is also misguided in its reliance on Vukasin, which did not involve a prior inconsistent statement. In Vukasin, we clearly distinguished subsection (1)(c) of § 45-5-406, MCA, when we held “[t]he State’s charge of partner or family member assault did not allege that Vukasin had actually assaulted [the victim], but had caused her apprehension of injury in violation of § 45-5-206(1)(c), MCA.” Vukasin, ¶ 17. We explained that “[t]he standard for determining whether a person has ‘reasonably apprehended bodily injury is that of a reasonable person under similar circumstances.’ ” Vukasin, ¶ 19, citing State v. McCarthy, 1999 MT 99, ¶ 27, 294 Mont. 270, 980 P.2d 629. We described the State’s evidence as follows:
The State presented evidence that Vukasin had been drinking that night and that his attitude and behavior changed when he did so. The evidence further established that Zigan asked Vukasin not to return to the apartment because of his drinking, but that Vukasin refused to honor that request and refused to turn over his apartment key to her. When Vukasin returned to their apartment, Zigan, concerned because of Vukasin’s past behavior, removed herself and her dog from the apartment, and locked herself in the neighbor's bathroom when Vukasin came searching for her. Vukasin then went into a rage, threatening to “trash” Zigan’s apartment if Zigan did not “get back” to the apartment, destroying property, yelling loudly and threatening to kill Zigan. Zigan placed not one, but three, calls to 911, and continued to take refuge in her neighbor’s apartment until police arrived, even though Vukasin was destroying her property. As officers attempted to communicate with Vukasin, she opened the door to her neighbor’s apartment, only to see an officer jumpingback. She observed knife holes in her apartment door and was instructed to go back into her neighbor’s apartment by the officers. She and the neighbor retreated out the back door of the apartment and, on police instruction, left the premises for the night.
Vukasin, ¶ 21. Based on the foregoing, we had little difficulty concluding that a rational trier of fact could have found the essential element of reasonable apprehension of bodily injury. Vukasin, ¶ 22.
¶32 Not only is Vukasin distinguishable because there were no prior inconsistent statements used by the state to establish an essential element of the crime, but Vukasin involves a different criminal offense under the partner or family member assault statute which *31 incorporates a “reasonable person under similar circumstances” standard. The Court conflates different statues in determining what is necessary to establish beyond a reasonable doubt the essential element of the crime; here, it is bodily injury or “physical pain,” §§ 45-2-101(5); 45-5-206(1)(a), MCA, not a “reasonable person under similar circumstances” standard.
¶33 Here, Rogers testified she did not remember the evening and that she was drunk. The only evidence of the essential element of bodily injury was Rogers’ prior inconsistent statement that she had been struck in the face. It was necessary for the State to corroborate that Rogers suffered bodily injury or “physical pain” for there to be sufficient evidence of an essential element of the crime. Baty’s testimony that he witnessed Strobel pushing Rogers into a vehicle does little to corroborate Rogers’ prior inconsistent statement to law enforcement that she was struck in the head and then grabbed by the face.
¶34 Based on the foregoing analysis and review of the evidence, I would reverse Strobel’s conviction because an essential element of the crime charged—acting purposely or knowingly to cause bodily injury—was supported only by an uncorroborated prior inconsistent statement. I dissent from the Court’s decision concluding otherwise.

 Astonishingly, this Court appears to suggest, over thirty years later, that there may have been circumstantial evidence in White Water supporting the element of penetration which was not considered or analyzed by this Court. Opinion, ¶ 19. Undoubtedly, corroboration of all the elements in a prosecution of sexual intercourse without consent are difficult when the victim recants, since frequently these offenses are committed out of the presence of other witnesses; hence, the nemesis of the prosecutor where the victim does not want to “press” charges. However, this Court should not depart fromthe clear guidance it has previously established concerning evidentiary rules and sufficiency determinations in order to assist the State in difficult prosecutions involving a recanting victim. Giant, ¶¶ 27, 34.