No. 97-424

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 158

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MARTY HAYWORTH,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Robert Goff, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bethany F. Schendel, Attorney at Law, Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Cregg W. Coughlin,

Assistant Attorney General; Helena, Montana

Brant S. Light, Cascade County Attorney; Julie Macek,

Deputy County Attorney; Great Falls, Montana

Submitted on Briefs: April 23, 1998

Decided: June 23, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1 Marty Hayworth appeals from a judgment and sentence of the Eighth Judicial District Court, Cascade County, based on a jury verdict convicting him of two counts of attempted deliberate homicide by accountability. For the reasons stated below, we affirm.**

**¶2 Hayworth presents the following issues on appeal:**

**¶3 1. Did the District Court err in denying Hayworth's motion to suppress evidence of his confession?**

**¶4 2. Did the District Court err in denying Hayworth's motion to exclude evidence of**

a discussion between Hayworth and co-defendant Lloyd Maier?

¶5 3. Did the District Court err in permitting Nick Burwell and Katie Crepeau to testify for the State?

¶6 4. Did the District Court err in permitting Nick Burwell to refresh his memory while testifying?

¶7 5. Did the District Court err in denying Hayworth's motion for a directed verdict?

¶8 6. Did the District Court err in denying Hayworth the opportunity to call attorneys Toni Marra and Scott Albers as rebuttal witnesses?

FACTUAL AND PROCEDURAL BACKGROUND

¶9 On the afternoon of August 12, 1995, Hayworth met up with Robert Bradford and Brian Kunesh, the victims in this case. Bradford was attempting to locate some car stereo equipment, and asked if Hayworth knew where he could find some car speakers.

¶10 Shortly after his encounter with Bradford and Kunesh, Hayworth gave an acquaintance of his, Nick Burwell, a ride to the trailer park where co-defendant Lloyd Maier resided. Burwell told Hayworth that someone named Tray had made death threats against Hayworth. Burwell and Hayworth then visited with Maier in his trailer and engaged in a conversation, the precise content of which is disputed by the various witnesses in this case. At some point during their conversation, however, it is clear that Maier learned of the threats made against Hayworth by Tray.

¶11 Shortly thereafter, Burwell asked Hayworth for a ride to the home of his friend, Shadow Mogensen. Before the three departed for Mogensen's, Maier loaded his SKS assault rifle and Burwell placed it in Hayworth's vehicle. With Hayworth behind the wheel, the three drove to Mogensen's home. When they arrived, Hayworth went into the house to use the telephone, and Mogensen came out to the vehicle to speak with Maier. At some point, after everyone had entered the house, Mogensen asked Burwell, Hayworth, and Maier to leave.

¶12 As they pulled away from Mogensen's house, Hayworth was driving and Maier was in the van's front passenger seat. Shortly thereafter, they passed Bradford and

Kunesh's vehicle approaching from the opposite direction. Burwell testified that he heard Hayworth say to Maier, "There's Bradford, do you want to get him?" and that Maier responded affirmatively. Hayworth then sped up, made a U-turn and pulled up next to the car driven by Bradford. One witness testified that Hayworth was driving so quickly that the van fishtailed as it approached Bradford's vehicle. Once Hayworth had stopped the van, Maier fired several shots at the vehicle, injuring both Bradford and Kunesh.

¶13 On August 15, 1995, Great Falls police questioned Maier about the incident. Maier related his version of the events which had transpired on August 12, 1995, and told police that Hayworth could verify his story. Maier then left the police station, and returned later that afternoon with Hayworth. Police placed Maier and Hayworth in separate rooms for questioning. Hayworth was first questioned by Officer Richard Hollis, who testified that he advised Hayworth of his *Miranda* rights and that Hayworth indicated he understood those rights and was willing to answer questions. Hayworth, in contrast, testified that Hollis did not explain his *Miranda* rights, but simply presented him with a form and instructed him to sign it prior to questioning. The State did not produce a written waiver in this case.

¶14 During his interview with Officer Hollis, Hayworth indicated that Burwell had fired the shots which injured Bradford and Kunesh. After Officer Hollis finished questioning Hayworth, he left the room and spoke with Officer Steffens who had just finished questioning Maier. Officer Hollis then proceeded to interview Maier, while Officer Steffens began questioning Hayworth. Officer Steffens did not advise Hayworth of his *Miranda* rights, and did not ask Officer Hollis whether had already Mirandized Hayworth. Confronted with inconsistencies between his and Maier's version of events, Hayworth altered his explanation of events and told Officer Steffens that Maier had in fact fired the shots which injured Bradford and Kunesh. After Hayworth had confessed his involvement in the events of August 12, 1995, to Officer Steffens, Officer Hollis returned to interview Hayworth again. Officer Hollis did not give Hayworth a full *Miranda* warning, but instead advised him that he was still under his rights. When Officer Hollis finished his questioning, he arrested Hayworth on an outstanding warrant for a probation violation.

¶15 By way of an information filed in the Eighth Judicial District Court on August 16, 1995, Hayworth was charged with two counts of attempted deliberate homicide by accountability, in violation of §§ 45-4-103(1), 45-2-302(3), and 45-5-102(1)(a),

MCA (1993). Hayworth was tried before a jury on March 19-22, 1996, and found guilty of both counts. On June 25, 1996, the District Court sentenced Hayworth to sixty years in Montana State Prison on each count, with the sentences to run concurrently. Hayworth appeals.

ISSUE 1

¶16 Did the District Court err in denying Hayworth's motion to suppress evidence of his confession?

¶17 Prior to trial, Hayworth filed a motion to suppress evidence of the "confession and/or admission," (hereinafter confession) he made during questioning by Officers Hollis and Steffens, on the grounds that it was given involuntarily. Following a suppression hearing, the District Court denied Hayworth's motion in a March 19, 1996, order. Looking to the totality of the circumstances, the court found that Hayworth "was given his *Miranda* rights and understood them, and that he made a knowing waiver thereof before giving his confession."

¶18 On appeal, Hayworth argues the court erred in finding he had been advised of his *Miranda* rights and erred in finding he knowingly, voluntarily, and intelligently waived those rights before giving his confession. Hayworth asserts the State failed to introduce evidence of the particular *Miranda* rights given, and failed to introduce a written waiver demonstrating Hayworth's decision to waive those rights. Moreover, Hayworth argues the State failed to rebut his assertion that "he was enticed before he made any incriminating statement to Detective Steffens." In conclusion, Hayworth argues the District Court erred in denying his motion to suppress evidence of his confession "because it resulted from a custodial interrogation where he was not properly Mirandized and the State failed to rebut testimony of involuntariness."

¶19 In response, the State first argues that, because Hayworth voluntarily appeared at the police station, he was not in custody at the time of his interrogation, and law enforcement officers were thus under no obligation to advise him of his *Miranda* rights. Even assuming Hayworth was in custody, however, the State argues the District Court properly looked to the totality of the circumstances before finding that Hayworth had been advised of his *Miranda* rights and agreed to waive them before making a voluntary confession.

¶20 We review a district court's denial of a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Siegal* (1997), 281 Mont. 250, 257, 934 P.2d 176, 180 (citing *State v. Williams* (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021; *State v. Flack* (1993), 260 Mont. 181, 188, 860 P.2d 89, 94). We have recognized that "when a defendant raises the question of voluntariness, the State must prove by a preponderance of the evidence that the confession or admission was voluntarily obtained." *State v. Mayes* (1992), 251 Mont. 358, 376, 825 P.2d 1196, 1208; § 46-13-301 (2), MCA. The question of whether a defendant has given a voluntary confession "is largely a factual determination that is within the discretion of the district court." *State v. Grey* (1995), 274 Mont. 206, 209, 907 P.2d 951, 953.

¶21 We have held that, in making that factual determination, the district court "must take into account the totality of the circumstances." *State v. Loh* (1996), 275 Mont. 460, 475, 914 P.2d 592, 601. Among the factors which the court must consider when evaluating the totality of the circumstances are the defendant's age and level of education, the interrogation technique used, whether the defendant was advised of his *Miranda* rights, the defendant's prior experience with the criminal justice system and police interrogation, the defendant's background and experience, and the defendant's demeanor, coherence, articulateness, and capacity to make full use of his faculties. *Loh*, 275 Mont. at 475-76, 914 P.2d at 601-02; *State v. Hermes* (1995), 273 Mont. 446, 450, 904 P.2d 587, 589.

¶22 In the present case, the District Court looked to the totality of the circumstances surrounding Hayworth's confession, and found the following:

> Defendant Marty Hayworth is approximately thirty-three (33) years old. He understands English and is of average intelligence. He has had numerous prior contacts with the criminal justice system, and has been given Miranda warnings on prior occasions. The Court finds that the police officers' testimony was credible and that the Defendant's was not. Accordingly, the Court believes that Defendant was given his Miranda rights and understood them, and that he made a knowing waiver thereof before giving his confession.

¶23 At the suppression hearing, Hayworth testified that Officer Hollis gave him a form and told him to sign it so the officers could speak to him, but asserted he was

not given an opportunity to read it. Moreover, when asked if law enforcement officers explained his rights to him, Hayworth responded, "Not that I know of."

¶24 Although Hayworth argues he was not informed of his rights, we conclude otherwise and hold the record contains substantial evidence which supports the District Court's finding that Hayworth "was given his *Miranda* rights and understood them." For example, at the suppression hearing Officer Hollis testified that he did in fact advise Hayworth of his *Miranda* rights when "he came in the office and the interview started." Also, Officer Hollis testified that Hayworth appeared to understand those warnings, and was able to respond appropriately to his questions. Although Hayworth asserted he had not slept for a prolonged period of time and was under the influence of drugs at the time of the questioning, Officers Hollis, Steffens, and Jim Wells all testified that Hayworth did not appear to be tired or under the influence of drugs. Furthermore, as the District Court found, the record indicates that Hayworth was thirty-three years old at the time, of average intelligence, and had had numerous prior contacts with the criminal justice system.

¶25 Based on the foregoing, and having considered the totality of the circumstances surrounding Hayworth's confession, we conclude that substantial evidence exists to support the District Court's finding that the State met its burden of showing by a preponderance of the evidence that Hayworth made a knowing, intelligent, and voluntary confession.

ISSUE 2

¶26 Did the District Court err in denying Hayworth's motion to exclude evidence of a discussion between Hayworth and co-defendant Lloyd Maier?

¶27 On the first day of his March 19, 1996, trial, Hayworth filed a motion in limine asking that the court issue an order prohibiting the State "from referring to any and all of Defendant's prior acts, including drug activity." More specifically, defense counsel clarified prior to jury selection that she would object to any attempts by the State to introduce evidence of statements allegedly made by Hayworth on the day of the crime regarding his intent to kill a man known as Big Rich, and one known as Tray. Hayworth argued that any evidence of his intent to kill either Big Rich or Tray was not part of the *res gestae* and, therefore, was inadmissible. The State, in contrast, argued that any such statements were admissible as part of the *res gestae*. After

hearing argument by the parties, the District Court ruled from the bench, ordering that it would "deny the motion in limine" and "allow the State to introduce this evidence."

¶28 As with any evidentiary ruling, we review the district court's decision for an abuse of discretion. *See State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263.

¶29 On appeal, Hayworth argues it was an abuse of discretion for the District Court to deny his motion in limine and admit "evidence regarding any potential plan to kill Tray or Big Rich Rustvold, that may have been discussed at Maier's trailer earlier on the day that Bradford and Kunesh were shot." Hayworth first argues evidence that he discussed killing anyone other than the victims in this case was not relevant, and was thus inadmissible. Even if relevant, Hayworth asserts, such evidence "was extremely prejudicial and minutely probative and therefore, should have been excluded at trial." Hayworth also argues any evidence that he discussed killing Tray or Big Rich was wholly independent of, and unrelated to the crime charged, and as such, was not part of the *res gestae*. Finally, Hayworth asserts for the first time on appeal that any evidence regarding a plan to kill Big Rich was not properly corroborated and, therefore, was inadmissible.

¶30 The State, in response, asserts that "[e]vidence of Hayworth's and Maier's discussions about killing Tray, Rustvold, and Bradford immediately prior to the loading of the weapon and traveling to Shadow Mogensen's house was properly admitted as part of the *res gestae*." The State argues the challenged evidence was relevant as well as probative, and "was clearly part and parcel of the same criminal offense with which [Hayworth] was charged."

¶31 We have held that "the State is entitled to present the entire *corpus delicti* of the crime charged, including matters closely related to the offense and explanatory of the crime." *State v. Monaco* (1996), 277 Mont. 221, 226, 921 P.2d 863, 866. Under the concept of *corpus delicti*, "[e]vidence of acts which are inextricably or inseparably linked with the crime charged is admissible without regard to the rules governing 'other crimes' evidence." *State v. Romero* (1986), 224 Mont. 431, 438, 730 P.2d 1157, 1162. Additionally, we have recognized that "admissibility is predicated on the jury's right to hear what transgressed immediately prior and subsequent to the commission of the offense charged, so that they may evaluate the evidence in the context in which

the criminal act occurred." *State v. Moore* (1992), 254 Mont. 241, 246, 836 P.2d 604, 607.

¶32 In *State v. Wing* (1994), 264 Mont. 215, 224, 870 P.2d 1368, 1374, we recognized that "[t]he concepts embraced by the term *res gestae* are included within the codification of that common law doctrine . . . referred to as the 'transaction' rule." We clarified that "[w]hether an act is referred to as part of the *res gestae* or as part of the 'transaction,' that act is evidence which is part of the same litigated event." *Wing*, 264 Mont. at 224, 870 P.2d at 1374. It is well established "that evidence which tends to explain circumstances surrounding the charged offense is relevant, probative and competent." *Wing*, 264 Mont. at 225, 870 P.2d at 1374.

¶33 Although Hayworth argues otherwise, we conclude evidence of a discussion between Hayworth and Maier in which the two discussed a plan to kill Tray or Big Rich is clearly a part of the *res gestae* and *corpus delicti* of the crime charged. The record indicates that the discussion at issue took place just prior to the time Hayworth and his companions drove into town with a loaded assault rifle. The State was entitled to explain the circumstances surrounding the charged offense by introducing evidence of that conversation. It was not error for the District Court to allow the State to introduce evidence of "what transgressed immediately prior . . . to the commission of the offense," so that the jury could "evaluate the evidence in the context in which the criminal act occurred." *Moore*, 254 Mont. at 246, 836 P.2d at 607. Based on the foregoing, we hold the District Court did not abuse its discretion in admitting, as part of the *res gestae* or *corpus delicti* of the crime charged, evidence of a discussion between Hayworth and Maier in which the two discussed a plan to kill Tray and Big Rich.

ISSUE 3

¶34 Did the District Court err in permitting Nick Burwell and Katie Crepeau to testify for the State?

¶35 At trial, Hayworth objected to the State calling Nick Burwell and Katie Crepeau as witnesses on the grounds that the State had failed to provide him with formal written notice of its intent to do so. The District Court overruled Hayworth's objections, and permitted both witnesses to testify. On appeal, Hayworth asserts the State's failure to provide him with formal written notice of its intent to call Crepeau

and Burwell as witnesses caused him "great[] prejudice." The State, in response, asserts "[t]here was no surprise, no prejudice to the defense, and no abuse of discretion" by the District Court in permitting the two witnesses to testify.

¶36 We review the district court's decision for an abuse of discretion. *State v. Liddell* (1984), 211 Mont. 180, 190, 685 P.2d 918, 924.

¶37 The record indeed indicates that the State failed to provide Hayworth with formal written notice of its intent to call Crepeau as a witness. Hayworth objected to the State's initial attempts to call Crepeau to the stand on the second day of trial. The State conceded that, although it had served Hayworth's co-defendant with notice of its endorsement of Crepeau, it had failed to similarly provide Hayworth with formal notice of its intent to call her as a witness. The prosecutor indicated that she had, however, "personally talked to the defense and given them these people and told them who we were calling." In contrast, Hayworth's counsel maintained that she "never knew about Katie Crepeau."

¶38 By way of resolution, the District Court suggested that the State call Crepeau "at a different time," thereby giving Hayworth's counsel the opportunity to interview the witness. Hayworth voiced no objection to the remedy proposed by the court, and indeed interviewed Crepeau before the State called her to testify. After having an opportunity to interview her, Hayworth did not object when the State called Crepeau to the stand. We additionally note that, although Hayworth asserts he did not learn of Crepeau's existence until the second day of trial, the State's affidavit in support of its motion for leave to file the information in this case identified Crepeau and described her involvement in the events of August 12, 1995.

¶39 In light of the foregoing, we conclude the State's failure to provide Hayworth with formal written notice of its intent to call Crepeau as a witness did not prejudice the defendant, and conclude the District Court did not abuse its discretion in permitting Crepeau to testify on behalf of the State.

¶40 At trial, Hayworth similarly objected to the State calling Burwell as a witness "because, again, he was not formally endorsed as a witness in this case." In response, the prosecutor argued that Hayworth had known for months that Burwell was going to testify and had in fact interviewed Burwell in anticipation of trial. Moreover, the prosecutor represented to the court that she had "personally discussed the fact that

[Burwell] was going to be a witness in this matter" with Hayworth's defense counsel. Thus, although the prosecutor conceded the State had failed to provide Hayworth with formal written notice of its intent to call Burwell as a witness, she argued the State's intent to call him was not "in any way any type of a surprise" to Hayworth's counsel.

¶41 As demonstrated by the following exchange between Hayworth's counsel and the presiding judge, the record indicates Hayworth was not prejudiced by the court's decision to allow Burwell's testimony:

> Q: [The court]: Are you telling me that Mr. Albers didn't interview this guy in anticipation of trial?
>
> A: [Hayworth's counsel]: I'm saying we've -- I guess I can't say why he interviewed him. I suspect he knew he was a possible witness in this case. But we've never got any formal notice that he was going to be called.
>
> Q: I understand. So the objection is you didn't receive a formal written notice?
>
> A: Yes.
>
> Q: Are you claiming prejudice if he testifies now?
>
> A: We would claim prejudice in light -- I think we have a right to stand by the rules of procedure.
>
> Q: I understand that. I'm not objecting to your making -- I'm not quarreling with your making the objection. I just want to find out if you think there's some prejudice to you if he testifies right now.
>
> A: We have interviewed Mr. Burwell.
>
> Q: Are you prepared to cross-examine him?
>
> A: Yes.

¶42 In light of the foregoing exchange, we similarly conclude the State's failure to provide Hayworth with formal written notice of its intent to call Burwell as a witness did not prejudice the defendant, and conclude the District Court did not abuse its discretion in permitting him to testify on behalf of the State.

## ISSUE 4

¶43 Did the District Court err in permitting Nick Burwell to refresh his memory while testifying?

¶44 During Burwell's testimony at trial, the State asked him about a taped statement he had given to police during an August 1995 interview. Burwell acknowledged giving the statement, and agreed that looking at that statement would enable him to better remember what happened on the day of the crime. The prosecutor then asked Burwell to read to himself a portion of the transcript from the taped statement.

¶45 Hayworth objected to the prosecutor "showing the statement before she asks questions," asserting that "the proper method is to ask questions [and] then show it to him." The court noted that Hayworth had "already been asked a question," and accordingly overruled Hayworth's objection.

¶46 On appeal, Hayworth argues the District Court erred in permitting Burwell to refresh his recollection at all, and erred in permitting the State to introduce portions of Burwell's statement into evidence. Review of the record indicates that Hayworth failed to specifically raise either of these objections at trial. Because he failed to properly preserve these precise objections at trial, Hayworth is precluded from now raising them for the first time on appeal. *See, e.g., State v. Swoboda* (1996), 276 Mont. 479, 481, 918 P.2d 296, 298.

## ISSUE 5

¶47 Did the District Court err in denying Hayworth's motion for a directed verdict?

¶48 Hayworth orally moved for a directed verdict at the close of the State's case, asserting the State had failed to demonstrate that he "purposely and knowingly

turned that car around with the intent of facilitating the shooting of Mr. Bradford and Kunesh." Hayworth asserted that, because the State's case rested almost entirely upon the uncorroborated "testimony of codefendants or coconspirators," he was entitled to a directed verdict.

¶49 The State opposed Hayworth's motion, instead arguing there was ample "evidence before the jury to substantiate the elements of the crime" charged. The court agreed, and denied Hayworth's motion on the grounds that there was "sufficient evidence to establish a prima facie case."

¶50 A district court's decision to grant or deny a motion for a directed verdict lies within its sound discretion and will not be overturned absent an abuse of that discretion. *State v. Keating* (Mont. 1997), 949 P.2d 251, 260, 54 St. Rep. 1250, 1255. It is well established that "we review a trial court's denial of a motion for a directed verdict to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Keating*, 949 P.2d at 260, 54 St. Rep. at 1255, (quoting *State v. Romannose* (1997), 281 Mont. 84, 88, 931 P.2d 1304, 1307).

¶51 On appeal, Hayworth argues the primary evidence connecting him to the commission of the crimes charged is that of his own confession, as well as that contained in Burwell's "accomplice" testimony. Alleging the State failed to introduce evidence which corroborated either his own confession or Burwell's testimony, Hayworth contends there was insufficient evidence to go to the jury and asserts the court thus erred in denying his motion for a directed verdict.

¶52 With respect to the State's ability to rely upon evidence of Hayworth's confession, § 46-16-215, MCA, provides that "[b]efore an extrajudicial confession of the defendant to the crime charged may be admitted into evidence, the prosecution shall introduce independent evidence tending to establish the commission of the crime charged."

¶53 We have held that the plain language of § 46-16-215, MCA, "requires only that the prosecution present independent evidence tending to establish that the crime was committed, not that the defendant committed it." *State v. Campbell* (1996), 278 Mont. 236, 244-45, 924 P.2d 1304, 1310.

¶54 Here, review of the record indicates the State clearly presented independent evidence which established the elements of the crime charged. For example, before the State introduced evidence of Hayworth's statements, the victims testified and described the events which transpired on August 12, 1995. Furthermore, the State introduced evidence that police had found rifle casings on the street and that the victims' vehicle had several bullet holes in it. Finally, Crepeau testified that she witnessed Hayworth drive down the street, make a U-turn and pull up alongside the victims' car just before shots were fired. In light of the foregoing, we conclude the State provided evidence which corroborated Hayworth's statements to police, and hold it was not error for the court to admit those statements into evidence.

¶55 As noted above, Hayworth additionally asserts the State failed to present evidence to corroborate Burwell's testimony, and that his conviction should thus be overturned. Hayworth characterizes Burwell as an accomplice, contending that "[i]f Defendant is legally accountable for Maier's actions, then so is Burwell."

¶56 Section 46-16-213, MCA, provides that:

A person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense . . . unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense.

¶57 In *State v. Kaczmarek* (1990), 243 Mont. 456, 795 P.2d 439, we explained that:

> "To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a *prima facie* case against him. *Corroborating evidence may be circumstantial and may come from the defendant and his witnesses*."
>
> *State v. Kemp* (1979), 182 Mont. 383, 387, 597 P.2d 96, 99. (Emphasis added.) (Citations omitted.) Corroborating testimony is viewed in a light most favorable to the State. The corroborating evidence need only *tend to connect*

the defendant with the crime charged and need not extend to every fact to which the accomplice testifies. Thus, corroborating evidence is not insufficient merely because it is circumstantial, disputed, or possibly consistent with innocent conduct; it is the jury's duty to resolve such factual questions.

*Kaczmarek*, 243 Mont. at 459-60, 795 P.2d at 441-42 (citations omitted).

**¶58 In the present case, whether Burwell was, as Hayworth asserts, an accomplice to the crimes charged, is, at best, questionable. Even assuming Burwell was an accomplice, however, we conclude the State presented ample evidence which corroborates his testimony. For example, Bradford, one of the victims in this case, identified Hayworth as the driver of the van and testified that Hayworth initially slowed down as he approached Bradford and Kunesh's vehicle, but then came "flying around" and cut them off just before shots were fired. Moreover, Crepeau corroborated Burwell's testimony regarding the speed and intentional manner in which Hayworth drove to reach and cut off Bradford's vehicle. Having reviewed the record, we conclude the State provided evidence which corroborated Burwell's testimony.**

**¶59 Based on the foregoing, we hold the District Court did not abuse its discretion in denying Hayworth's motion for a directed verdict.**

ISSUE 6

**¶60 Did the District Court err in denying Hayworth the opportunity to call attorneys Toni Marra and Scott Albers as rebuttal witnesses?**

**¶61 At the close of the second day of trial, Hayworth informed the court that he intended to call co-defendant Maier's attorney, Toni Marra, as a rebuttal witness for the limited purpose of rebutting certain portions of Detective Hollis's testimony. Hayworth also informed the court that he intended to call Scott Albers, formerly Hayworth's and Mogensen's attorney, as a witness to rebut portions of Nick Burwell's testimony.**

**¶62 After reviewing a transcript of Officer Hollis's and Burwell's testimonies, the court determined that there were "some issues that would be proper for**

impeachment." After conferring with her client, Marra indicated Maier would allow her to testify if the court would make a prior ruling restricting the scope of Hayworth's questioning. The court refused to "make that prior ruling," so Maier asserted his attorney-client privilege and the court refused to allow Marra to testify.

¶63 The court and counsel engaged in a similar discussion with respect to Hayworth's attempts to call Mogensen's former attorney, Scott Albers, as a witness. Mogensen did not waive her attorney-client privilege, so the court similarly refused to allow Albers to testify.

¶64 On appeal, Hayworth argues the court erred in denying what he characterizes as Marra's motion for a protective order limiting the scope of Hayworth's questioning. Hayworth also agues the "specific rebuttal testimony" he wished to elicit from Marra "was not attorney-client privilege because the conversation" he wanted to ask her about "occurred in the presence of third parties." Hayworth argues he was prejudiced by the court's refusal to issue a protective order, and he was thereby "denied the opportunity to present crucial testimony which greatly prejudiced him and deprived [him] of the right to a fair and impartial trial."

¶65 Having reviewed the record, we conclude Hayworth's arguments are without merit. Whether Marra actually moved for a protective order is not at all clear. Even assuming she did, we hold it was not error for the court to refuse to "make a prior ruling" limiting the scope of Hayworth's questioning. Although Hayworth asserts the statements about which he intended to ask Marra occurred in the presence of third parties, Maier asserted his attorney-client privilege to protect, not what Marra may have heard during the interview with the police officer, but rather what privileged information she may have revealed on cross-examination. We hold the District Court did not abuse its discretion in denying Hayworth the opportunity to call Maier's attorney as a rebuttal witness in light of the fact that Maier refused to waive his attorney-client privilege. We similarly hold the District Court did not abuse its discretion in refusing to permit Scott Albers to testify in light of the fact that Mogensen never waived her attorney-client privilege.

¶66 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER