No. 03-118

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2004 MT 87

STATE OF MONTANA,

      Plaintiff and Respondent,

v.

JAMES C. BAILEY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DC-00–02
Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Palmer A. Hoovestal; Hoovestal, Kakuk & Fanning, Helena, Montana

      For Respondent:

        Honorable Mike McGrath, Attorney General; Jennifer Anders, Assistant Attorney General, Helena, Montana

        Chris Christensen, Pondera County Attorney, Conrad, Montana

        Robert L. Deschamps, III, Special Deputy County Attorney, Missoula Montana

Submitted on Briefs: January 6, 2004

Decided:  April 6, 2004

Filed:

_____
                Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    James C. Bailey (Bailey) appeals from the judgment entered by the Ninth Judicial District Court, Pondera County, on his conviction and sentence for two counts of felony incest. We affirm.

¶2    Bailey raises the following issues on appeal:

¶3    1. Did the District Court abuse its discretion in granting the prosecution's motion to add an expert to its witness list four days prior to trial?

¶4    2. Did the District Court abuse its discretion in allowing Dr. Todd Gianarelli to testify regarding his opinion that M.C. and A.B. had been sexually abused?

¶5    3. Did the District Court err in denying Bailey's motion to dismiss one count of the information at the close of the prosecution's case-in-chief?

¶6    4. Did the District Court abuse its discretion in refusing to allow Bailey's expert witness to testify?

¶7    5. Did the District Court abuse its discretion in denying Bailey's motion for a new trial?

¶8    6. Did the District Court err in sentencing Bailey?

BACKGROUND

¶9    In February of 2000, the State of Montana (State) charged Bailey by information with two counts of felony incest based on allegations that he knowingly had sexual contact with his two stepdaughters, M.C. and A.B., between June 1, 1996, and July 20, 1999. Bailey

2

pleaded not guilty to the charges and a jury trial was held in June of 2002. The jury returned a verdict of guilty on both counts. The District Court subsequently sentenced Bailey to two ten-year commitments to the Montana Department of Corrections with six years suspended on each, the sentences to run concurrently, and entered judgment. Bailey appeals.

DISCUSSION

¶10    1. Did the District Court abuse its discretion in granting the State's motion to add an expert to its witness list four days prior to trial?

¶11    The jury trial in this case was scheduled to begin on June 24, 2002. On June 20, 2002, the State moved the District Court for leave to add Dr. Nora Gerrity (Gerrity) to the list of prosecution witnesses. Gerrity, a pediatrician who specializes in child sexual abuse cases, had examined M.C. and A.B. in January of 2000, at the request of the Pondera County child protective services. Gerrity's name was not on the list of witnesses set forth in the information, but the State wished to have her testify regarding her diagnoses of whether the girls had been sexually abused. Bailey objected on the basis of unfair surprise, asserting that the lack of notice prevented him from adequately preparing to cross-examine Gerrity. The District Court granted the State's motion to add Gerrity to its witness list, but limited the scope of her testimony. Bailey asserts error. We review a district court's ruling allowing the testimony of a witness to determine whether the court abused its discretion. State v. Hayworth, 1998 MT 158, ¶ 36, 289 Mont. 433, ¶ 36, 964 P.2d 1, ¶ 36.

¶12    Bailey argues that the District Court abused its discretion in allowing the State to add Gerrity as a witness because the State's untimely disclosure of its intent to have Gerrity

3

testify violated its statutory obligation to provide pretrial disclosure of witnesses. He further asserts that the lack of notice that Gerrity would be testifying prejudiced him because he did not have adequate time in which to interview her, prepare to cross-examine her and obtain an expert opinion refuting her testimony. The State responds that it complied with its statutory discovery obligations and Bailey had sufficient notice of the witness to prepare for her testimony.

¶13    Section 46-15-322(1), MCA, provides, in pertinent part, that

> [u]pon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control:
>
> (a) the names, addresses, and statements of all persons whom the prosecutor may call as witnesses in the case in chief;
>
> . . .
>
> (c) all written reports or statements of experts who have personally examined the defendant or any evidence in the particular case, together with the results of physical examinations, scientific tests, experiments, or comparisons . . . .

We have held that, where the prosecution has provided defense counsel with full opportunity to examine its files and has not refused any defense request to examine relevant evidence, the prosecution has complied with the discovery requirements of § 46-15-322(1), MCA. See City of Missoula v. Lesko, 2003 MT 177, ¶¶ 11-12, 316 Mont. 401, ¶¶ 11-12, 73 P.3d 166, ¶¶ 11-12.

¶14    In February of 2002, the State provided its entire case file to Bailey's attorney to ensure that full disclosure of all information within the file had been provided. Gerrity's

4

report documenting her findings resulting from the examinations and her diagnoses was included in this file. Moreover, Bailey does not assert that the State refused to comply with any request he made to examine evidence in the prosecution's control. We conclude that the State complied with the disclosure requirements of § 46-15-322(1), MCA.

¶15    Bailey relies on Superior Enterprises v. Montana Power Co., 2002 MT 139, 310 Mont. 198, 49 P.3d 565, and State v. Smith (1986), 220 Mont. 364, 715 P.2d 1301, in support of his argument that the District Court abused its discretion in allowing Gerrity to testify without sufficient pretrial notice. We conclude, however, that both cases are distinguishable.

¶16    In Superior Enterprises, the defendant called an expert witness to testify in its case-in-chief but had not disclosed the identity of the witness to the plaintiff prior to trial. The plaintiff objected to the witness, but the trial court allowed the testimony. Superior Enterprises, ¶ 4. Prior to trial, the plaintiff had sent the defendant written interrogatories which included a request pursuant to Rule 26(b)(4)(A)(i), M.R.Civ.P., that the defendant disclose all expert witnesses to be called at trial. The defendant failed to disclose the identity of the witness at issue in answering the interrogatory and, despite acknowledging the continuing nature of the request, failed to disclose the witness at any time thereafter. Superior Enterprises, ¶¶ 15-16. Moreover, the trial court entered a scheduling order prior to trial which required each party to disclose its experts by a specific date pursuant to Rule 26(b)(4)(A)(i), M.R.Civ.P. Again, the defendant failed to disclose the expert witness at issue. Superior Enterprises, ¶ 17. On appeal, we held that, where the defendant had failed

5

to disclose its witness in response to discovery requests and a court scheduling order in violation of Rule 26(b)(4)(A)(i), M.R.Civ.P., the trial court abused its discretion in allowing the witness to testify. Superior Enterprises, ¶ 20. In the present case, Bailey does not assert a Rule 26(b)(4)(A)(i), M.R.Civ.P., violation by the State and, as a result, Superior Enterprises is inapplicable.

¶17 In Smith, the prosecution moved to add an expert to its witness list two days before trial. The defendant objected, arguing that the prosecution had failed to establish good cause to add the witness as required by § 46-15-301(1), MCA, and the lack of notice prejudiced his case because he had no time to obtain his own expert on the subject. Smith, 220 Mont. at 373-74, 715 P.2d at 1306-07. The trial court determined good cause existed to add the witness because the prosecution filed its motion to add the expert immediately upon discovering the relevancy of the testimony and the name of the witness. Smith, 220 Mont. at 374, 715 P.2d at 1307. The court further determined that, because the prosecution's case-in-chief was expected to be lengthy, the defendant had adequate time to obtain his own expert. The court recommended the prosecution present its expert at the end of its case so as to give the defendant more time, concluded that the defendant had not been prejudiced by lack of time to secure a witness and denied the defendant's motion to continue the trial. Smith, 220 Mont. at 374, 715 P.2d at 1307.

¶18 During the testimony of the prosecution's expert, the defendant in Smith realized that there was not sufficient time to obtain his own expert and, at that time, moved the trial court to strike the prosecution's expert testimony. The court granted the motion, struck the

6

testimony and gave the jury a cautionary instruction. Smith, 220 Mont. at 375, 715 P.2d at 1307. The defendant asserted on appeal that the trial court erred in allowing the prosecution to present its expert witness. We concluded that the trial court did not err in determining that good cause existed to add the witness pursuant to § 46-15-301(1), MCA. Smith, 220 Mont. at 373-74, 715 P.2d at 1306-07. We further concluded that, even if the trial court erred in determining there was no prejudice to the defendant in allowing the expert testimony, such error was harmless in light of other evidence presented which clearly established the defendant's guilt. Smith, 220 Mont. at 375, 715 P.2d at 1307.

¶19 We conclude that Smith is of no assistance to Bailey here. First, § 46-15-301(1), MCA, was repealed in 1985 and, consequently, its good cause requirement for adding witnesses no longer exists. See 1985 Mont. Laws, Ch. 202, Sec. 11. Second, we never addressed whether, under the facts of the case, the defendant in Smith actually was prejudiced by the late disclosure of the expert witness. Rather, we held that, if any error existed in allowing the witness, such error was harmless.

¶20 In the present case, the District Court held an omnibus hearing on March 6, 2000, at which the State informed Bailey it would be calling the girls' counselor and physicians as expert witnesses at trial. Bailey was in possession of Gerrity's written report outlining her findings and diagnoses by February of 2002. On June 19, 2002, Bailey moved *in limine* to exclude any testimony by medical doctors regarding out-of-court statements made by the girls during examinations. The motion specifically referenced Gerrity as one of the doctors who examined the girls. The State moved to add Gerrity as an expert witness the following

7

day. Bailey then had four days prior to trial to interview Gerrity and prepare to cross-examine her. Although Bailey asserts he could not reach Gerrity during the week before trial, he did not request a continuance to give him additional time. Moreover, Bailey was aware the State intended to call as an expert witness a second physician who examined the girls and who intended to testify to findings and diagnoses similar to Gerrity's. Bailey's preparation for cross-examination of the second physician necessarily would have assisted with his preparation for cross-examination of Gerrity to some degree.

¶21    Based on the record before us, we conclude Bailey has failed to establish that the District Court's allowing the State to add Gerrity as a witness was an abuse of discretion or that he was prejudiced thereby. We hold, therefore, that the District Court did not abuse its discretion in granting the prosecution's motion to add an expert to its witness list four days prior to trial.

¶22    2. Did the District Court abuse its discretion in allowing Dr. Todd Gianarelli to testify regarding his opinion that M.C. and A.B. had been sexually abused?

¶23    Prior to trial, Bailey moved *in limine* to exclude any medical testimony regarding statements made by either M.C. or A.B. during physical examinations which identified Bailey as the perpetrator of the abuse. He argued that such testimony would be hearsay. The District Court reserved ruling on the motion until such time as the issue arose during trial.

¶24    During the State's case-in-chief, the prosecutor presented Dr. Todd Gianarelli (Gianarelli), a medical doctor who had conducted physical examinations of the two girls, as an expert witness. The prosecutor sought to elicit testimony from Gianarelli regarding

8

statements made by M.C. and A.B. during their examinations which identified Bailey as the perpetrator. The District Court determined the testimony was inadmissible on hearsay grounds and granted Bailey's motion *in limine* with regard to that portion of Gianarelli's testimony.

¶25 Gianarelli subsequently testified that, in addition to physically examining each of the girls, he spoke with the girls in order to obtain a history. In conformity with the District Court's ruling on the motion *in limine*, Gianarelli did not relate what the girls told him during the examinations. He did testify that in his medical opinion, based on the physical examinations and the oral history, both girls had been sexually abused. Bailey objected to this testimony and the District Court overruled the objection. Bailey asserts error. As stated above, we review a district court's ruling on the admissibility of testimony to determine whether the court abused its discretion. Hayworth, ¶ 36.

¶26 Bailey argues that allowing Gianarelli to state his medical opinion which was based, in part, on the history he took from M.C. and A.B., essentially circumvented the District Court's ruling that the girls' statements to Gianarelli were inadmissible and allowed the jury to unreasonably infer that Bailey was the perpetrator by speculating as to what the girls had stated during the examinations. Bailey does not support this argument with any citation to, or analysis of, legal authority as required by Rule 23(a)(4), M.R.App.P. It is the appellant's burden to establish error by a district court and such error cannot be established in the absence of legal authority. State v. Clausell, 2001 MT 62, ¶ 48, 305 Mont. 1, ¶ 48, 22 P.3d 1111, ¶ 48.

9

¶27     Moreover, we have held that, pursuant to Rule 703, M.R.Evid., an expert witness may rely on inadmissible evidence–such as hearsay statements–when forming an opinion, but those inadmissible statements may not be repeated to the jury.  Perdue v. Gagnon Farms, Inc., 2003 MT 47, ¶ 34, 314 Mont. 303, ¶ 34, 65 P.3d 570, ¶ 34.  That is precisely what occurred here; Gianarelli gave his expert medical opinion, based in part on the girls' hearsay statements, but did not repeat those statements.  We hold, therefore, that the District Court did not abuse its discretion in allowing Gianarelli to testify that, in his opinion, M.C. and A.B. had been sexually abused.

¶28     3.  Did the District Court abuse its discretion in denying Bailey's motion to dismiss one count of the information at the close of the State's case-in-chief?

¶29     At the close of the State's case-in-chief, Bailey moved to dismiss both counts of the information pursuant to § 46-16-403, MCA, which provides that

> [w]hen, at the close of the prosecution's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant.

Bailey asserted that, although there was evidence that M.C. and A.B. had been sexually abused, there was no evidence establishing that he was the perpetrator of the abuse.  The District Court denied the motion.  Bailey asserts error only as to the denial of his motion to dismiss the count alleging that he sexually abused A.B.

¶30     We review a district court's denial of a motion to dismiss brought pursuant to § 46-16-403, MCA, to determine whether the court abused its discretion.  Clausell, ¶ 28.  In doing so, we determine whether, viewing the evidence in the light most favorable to the

10

prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. Clausell, ¶ 28.

¶31    A person commits the offense of incest if the person

> knowingly marries, cohabits with, has sexual intercourse with, or has sexual contact, as defined in 45-2-101, with an ancestor, a descendant, a brother or sister of the whole or half blood, or any stepson or stepdaughter.

Section 45-5-507(1), MCA. The State charged Bailey with two counts of incest for knowingly having sexual contact with his two stepdaughters. "Sexual contact" is defined as

> touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely:
>
> (a) cause bodily injury to or humiliate, harass, or degrade another; or
>
> (b) arouse or gratify the sexual response or desire of either party.

Section 45-2-101(66), MCA. Bailey contends that no rational trier of fact could have found him guilty of incest with regard to A.B. beyond a reasonable doubt, because no evidence linked him to her abuse.

¶32    The State presented the testimony of Drs. Gerrity and Gianarelli, outlined above, which was sufficient to establish that A.B. had been sexually abused. The State also called six-year-old A.B. as a witness during its case-in-chief. The prosecutor attempted to question her, but the District Court eventually declared her to be incompetent to testify. Consequently, there was no direct evidence from A.B. that Bailey had sexual contact with her. However, A.B.'s mother also testified. She stated that she had observed Bailey rolling around on the floor with A.B., moaning and French-kissing the girl. She also testified that

11

Bailey would lie on the couch with A.B. on top of him and rub A.B.'s buttocks underneath her clothing. In addition, the mother related an incident where Bailey took A.B. into the bedroom and closed the door. After they had been in the room approximately five minutes, she entered the bedroom to find Bailey and A.B. in the bed together. Bailey was naked from the waist down and A.B. was under the sheets moving around the area of Bailey's groin.

¶33 Viewing the evidence in the light most favorable to the prosecution, we conclude that the testimony of A.B.'s mother was sufficient evidence from which the jury could have presumed that Bailey was the person who had sexual contact with A.B. On that basis, the jury could have found him guilty of incest as to A.B. beyond a reasonable doubt. We hold, therefore, that the District Court did not abuse its discretion in denying Bailey's motion to dismiss the count alleging he committed incest with regard to A.B.

¶34 4. Did the District Court abuse its discretion in refusing to allow Bailey's expert witness to testify?

¶35 Prior to trial, Bailey underwent psychosexual testing and evaluation with Dr. Michael Scolatti (Scolatti), a licensed clinical psychologist. Bailey sought to present Scolatti's testimony at trial regarding both the outcome of the psychological testing and Scolatti's opinion of the test results as exculpatory evidence. The State objected to Scolatti's testimony on the basis that it was not permissible expert testimony under Rule 702, M.R.Evid., would invade the province of the jury and would impermissibly bolster Bailey's credibility. The District Court agreed and refused to allow Scolatti's testimony. Bailey asserts error. We

12

review a district court's ruling on the admissibility of testimony to determine whether the court abused its discretion. Hayworth, ¶ 36.

¶36    Bailey contends Scolatti's proposed testimony was proper expert testimony because it would have assisted the jury in understanding the evidence and determining whether he had engaged in sexual contact with M.C. and A.B. He relies on Benjamin v. Torgerson, 1999 MT 216, 295 Mont. 528, 985 P.2d 734, as support for his argument that Scolatti's testimony was admissible. In that case, Benjamin brought a civil action against Torgerson alleging that Torgerson had sexually abused him during his youth and caused him to suffer psychological damage and mental distress. Benjamin, ¶ 1. During the defense case, Torgerson offered testimony from two expert witnesses regarding the results of psychological testing of Benjamin which were administered to assess whether he was malingering or falsifying symptoms of a mental disease. Benjamin, ¶ 38. The district court overruled Benjamin's objections to the testimony, concluding that Benjamin had opened the door to the issue by having his own experts testify regarding the test results during his case-in-chief. Benjamin, ¶ 47. Benjamin asserted on appeal that the district court erred in allowing the testimony because it constituted improper credibility testimony. Benjamin, ¶ 38.

¶37    In addressing the issue raised by Benjamin, we observed at the outset that "expert testimony regarding the credibility of a witness improperly invades the jury's function by placing a stamp of scientific legitimacy on a victim's allegations, or by dismissing the validity of the allegations." Benjamin, ¶ 40. We further observed that, notwithstanding the general rule, we have allowed expert testimony "to assist the trier of fact to understand

13

evidence of potential malingering." Benjamin, ¶ 41. Torgerson's experts testified only as to their interpretations of the evidence which did not support Benjamin's claims, including reference to untruthful statements made by Benjamin which were documented in his psychiatric history and to which his own experts testified. Torgerson's experts did not invade the province of the jury by testifying whether Benjamin was or was not being truthful. We concluded, therefore, that the district court did not err by admitting testimony relating to Benjamin's credibility. Benjamin, ¶¶ 48-49.

¶38    Benjamin is readily distinguishable. There, the defendant offered the expert testimony at issue to rebut the plaintiff's claims where the plaintiff already had opened the door to the issue of his credibility. Here, Bailey offered Scolatti's testimony to bolster his own claim that he did not commit the alleged offenses. In addition, the expert testimony in Benjamin related to the issue of whether the plaintiff was malingering or falsifying symptoms of a mental disease, which we previously have held is a proper subject for expert testimony. Benjamin, ¶ 41. There is no issue of malingering in this case. Consequently, the general rule stated in Benjamin applies. Expert testimony offered to bolster the credibility of a party and his or her claims is improper because it invades the province of the jury by "placing a stamp of scientific legitimacy on a victim's allegations, or by dismissing the validity of the allegations." Benjamin, ¶ 40. We conclude Benjamin does not support Bailey's argument here.

14

¶39 Bailey offers no other authority in support of his assertion that Scolatti's testimony was admissible. As a result, we hold that the District Court did not abuse its discretion in refusing to allow the testimony of Bailey's expert witness.

¶40 5. Did the District Court abuse its discretion in denying Bailey's motion for a new trial?

¶41 The State charged Bailey with two counts of incest for allegedly having sexual contact with his stepdaughters, M.C. and A.B. At the close of trial, the District Court instructed the jury with regard to each offense that

> [i]n order to find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act constituting said crime within the period alleged.
>
> And, in order to find the defendant guilty, you must unanimously agree upon the commission of the same specific act (or acts) constituting said crime within the period alleged.

The jury ultimately found Bailey guilty on both incest counts.

¶42 Bailey subsequently moved the District Court for a new trial pursuant to § 46-16-702, MCA, asserting that insufficient evidence supported the verdict and the jury failed to follow the instructions given by the court. The court denied the motion and Bailey asserts error. We review a district court's ruling on a motion for a new trial to determine whether the court abused its discretion. State v. Landis, 2002 MT 45, ¶ 42, 308 Mont. 354, ¶ 42, 43 P.3d 298, ¶ 42.

¶43 Bailey contends that the District Court abused its discretion in denying his motion to dismiss the count of the information alleging he committed incest against A.B. because no

15

testimony established a specific act of sexual contact with A.B. during the period between June of 1996 and July of 1999. Consequently, according to Bailey, the jury could not have agreed upon a specific act of sexual contact as required by the jury instruction.

¶44 Bailey correctly observes that the District Court declared A.B. incompetent to testify. Nor could Drs. Gerrity or Gianarelli testify regarding any specific incident of sexual contact between A.B. and Bailey. As discussed generally above, however, A.B.'s mother testified regarding a specific incident in June or July of 1999 where Bailey took A.B. into the bedroom and closed the door. After they had been in the room approximately five minutes, A.B.'s mother opened the door and observed Bailey lying on the bed, naked from the waist down, with A.B. moving around under the sheets near his groin area. We conclude that this testimony is sufficient evidence on which the jury could have found a specific act of sexual contact to have occurred. As a result, we hold that the District Court did not abuse its discretion in denying Bailey's motion for a new trial.

¶45 6. Did the District Court err in sentencing Bailey?

¶46 Section 45-5-507, MCA, provides, in pertinent part, as follows:

> (3) A person convicted of incest shall be punished by life imprisonment or by imprisonment in the state prison for a term not to exceed 100 years or be fined an amount not to exceed $50,000.

> (4) If the victim is under 16 years of age and the offender is 3 or more years older than the victim or if the offender inflicts bodily injury upon anyone in the course of committing incest, the offender shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 4 years or more than 100 years and may be fined not more than $50,000.

16

It is undisputed that the two victims in the present case were under the age of 16 and Bailey was more than three years older than both. At the sentencing hearing, the State asserted that § 45-5-507(4), MCA, required a mandatory minimum sentence of four years on each count and recommended the District Court impose two 20-year sentences with five years suspended on each. Bailey argued that, pursuant to § 46-18-205(1), MCA, the District Court was authorized to suspend all but the first 30 days of any sentence and recommended the court suspend all but 30 days of any sentence it imposed.

¶47 The District Court determined that § 45-5-507(4), MCA, required the imposition of a mandatory minimum sentence of four years. Based on that determination, the court sentenced Bailey to a 10-year commitment to the Department of Corrections, with six years suspended, on each count. Bailey asserts error. We review a district court's sentence in a criminal case for legality only, confining our review to whether the sentence is within statutory parameters. State v. Pritchett, 2000 MT 261, ¶ 6, 302 Mont. 1, ¶ 6, 11 P.3d 539, ¶ 6.

¶48 Bailey contends the District Court erred in concluding that § 45-5-507(4), MCA, requires imposition of a mandatory minimum four-year sentence which cannot be suspended. He asserts that § 46-18-205(1), MCA, authorizes the suspension of all but the first 30 days of a sentence for incest. Section 46-18-205(1), MCA, provides that where the victim of certain enumerated offenses "was less than 16 years old, the imposition or execution of the first 30 days of a sentence of imprisonment . . . may not be deferred or suspended and the provisions of 46-18-222 do not apply to the first 30 days of the imprisonment." Incest is one

17

of the offenses enumerated in § 46-18-205(1), MCA. Section 46-18-222, MCA, lists exceptions to statutory mandatory minimum sentences.

¶49 We addressed a similar argument in State v. Fauque, 2000 MT 168, 300 Mont. 307, 4 P.3d 651. There, Fauque, who was 53 years old, pleaded guilty to one count of sexual intercourse without consent and one count of sexual assault for acts committed against his 14-year-old daughter. Fauque, ¶ 3. Section 45-5-503(3)(a), MCA, provided that, where the victim of sexual intercourse without consent is less than 16 years old and the offender is three or more years older than the victim, the offender shall be punished by imprisonment in the state prison for a term not less than four years or more than 100 years. Consequently, the district court sentenced Fauque to 25 years at the Montana State Prison with all but four years suspended for the sexual intercourse without consent offense. Fauque appealed the court's imposition of the mandatory four-year minimum sentence. Fauque, ¶ 6.

¶50 On appeal, Fauque argued that there was a conflict between the § 45-5-503(3)(a), MCA, four-year mandatory minimum sentence for sexual intercourse without consent and § 46-18-201(8), MCA, which provided that, where the victim of sexual intercourse without consent was less than 16 years old, the first 30 days of a sentence of imprisonment may not be deferred or suspended and § 46-18-222, MCA, did not apply to those first 30 days of imprisonment. Fauque asserted that the conflict between the sentencing statutes created an ambiguity which should be resolved in his favor under the "rule of lenity." We concluded, however, that there was no conflict between the statutes. Fauque, ¶ 9.

¶51 We first concluded that the mandatory minimum four-year sentence set forth in § 45-5-503(3)(a), MCA, clearly applied to Fauque because he was 53 years old and his daughter was 14 years old at the time of the offense. Fauque, ¶ 12. We then concluded that the provisions of § 46-18-201(8), MCA, did not apply because the district court had determined that none of the § 46-18-222, MCA, exceptions to the four-year mandatory minimum sentence existed. Fauque, ¶ 13. Specifically, we stated that

> [a] plain reading of § 46-18-201(8), MCA (1997), ... reflects the Legislature's intent that, on a conviction for sexual intercourse without consent involving a victim less than 16 years old, the first 30 days of any mandatory minimum sentence under § 45-5-503, MCA (1997), may not be deferred or suspended under any circumstances and, specifically, that the exceptions provided in § 46-18-222, MCA (1997), do not apply to the first 30 days. In other words, even where a § 46-18-222, MCA (1997), exception to the mandatory minimum sentence set forth in § 45-5-503(3)(a), MCA (1997), exists, a district court may not suspend the first 30 days of the term of imprisonment if the victim is less than 16 years old. In a situation like that before us in the present case, § 46-18-201(8), MCA (1997), simply does not come into play because no § 46-18-222, MCA (1997), exception to the 4-year minimum sentence mandated by § 45-5-503(3)(a), MCA (1997), exists.

Fauque, ¶ 13. We concluded, on that basis, that no conflict existed between the statutes and affirmed the district court's sentence. Fauque, ¶¶ 13-14.

¶52 The situation here is nearly identical to that in Fauque. Because both M.C. and A.B. were less than 16 years of age and Bailey was more than three years older at the time of the offenses, the § 45-5-507(4), MCA, four-year mandatory minimum sentence clearly is applicable. Furthermore, the District Court determined that none of the exceptions to the mandatory minimum sentence set forth in § 46-18-222, MCA, existed and Bailey has not challenged that determination. Moreover, § 46-18-205(1), MCA, is similar to the statute at

19

issue in Fauque in that the language reflects legislative intent that, upon a conviction for incest involving a victim less than 16 years old, the first 30 days of any mandatory minimum sentence may not be deferred or suspended under any circumstances and, specifically, that the exceptions to a mandatory minimum sentence set forth in § 46-18-222, MCA, do not apply to the first 30 days of the sentence. See Fauque, ¶ 13. As in Fauque, the provisions of § 46-18-205(1), MCA, do not come into play in this case because no § 46-18-222, MCA, exceptions to the mandatory minimum sentence for incest exist.

¶53 We conclude that the District Court did not err in determining that § 45-5-507(4), MCA, required imposition of a four-year mandatory minimum sentence for incest in this case. We hold, therefore, that the District Court did not err in sentencing Bailey.

¶54 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE
/S/ JAMES C. NELSON

20